1

2                              UNITED STATES DISTRICT COURT

3                            NORTHERN DISTRICT OF CALIFORNIA

4

5

6

7     STACEY GREENFIELD,

              Plaintiff,                              Case No.  15-cv-03583-PJH

8

      v.

9                                                     **ORDER GRANTING MOTION TO
                                                      DISMISS IN PART AND DENYING IT IN**
10    CRITERION CAPITAL MANAGEMENT,                   **PART**
      LLC, et al.,

11            Defendants.

12

13

14           Defendants' motion to dismiss the first amended complaint ("FAC") in the above-

15    entitled action pursuant to Federal Rule of Civil Procedure 12(b)(6) came on for hearing

16    before this court on May 18, 2016.  Plaintiffs appeared by their counsel Glenn Ostrager,

17    Paul Wexler, and Willem Jonckheer; and defendants appeared by their counsel Michael

18    Swartz, Randall Adams, Roger Mead, and Steven Shatz.  Having read the parties'

19    papers and carefully considered their arguments and the relevant legal authority, the

20    court hereby GRANTS the motion in part and DENIES it in part.

21                                       **INTRODUCTION**

22           Plaintiff Stacey Greenfield brings this action derivatively under § 16(b) of the

23    Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78p(b), on behalf of

24    nominal defendant Veeva Systems, Inc. ("Veeva").  FAC ¶ 15.  Plaintiff seeks

25    disgorgement of "short-swing" profits she alleges were recovered by Criterion Capital

26    Management LLC ("Criterion Capital"), three individual members of Criterion Capital, and

27    certain funds for which Criterion Capital acts as the investment adviser.  Id.  Plaintiff

28    brought this action after Veeva declined to do so.  FAC ¶ 42.

United States District Court
Northern District of California

Criterion Capital is a California limited liability company with its principal place of business in San Francisco.  FAC ¶ 3.  It is a registered investment adviser ("RIA").  FAC ¶ 22.  Named as defendants in addition to Criterion Capital are three individuals and six funds.  The individual defendants are Christopher H. Lord ("Lord"), David Riley ("Riley"), and Tomoko Fortune ("Fortune"), each of whom resides in California and is a member and portfolio manager of Criterion Capital.  FAC ¶¶ 10-12.  Plaintiff asserts that "[t]rusts established by Lord, Riley, and Fortune own Criterion Capital."  FAC ¶ 12.

The defendant funds are Criterion Capital Partners Master Fund, L.P. ("Partners Master Fund"); Criterion Capital Partners Master Fund GP, Ltd. ("Partners GP"); Criterion Horizons Master Fund, L.P. ("Horizons Master Fund"); Criterion Horizons Master Fund GP, Ltd. ("Horizons GP"); Criterion Vista Master Fund, L.P. ("Vista Master Fund"); and Criterion Vista Master Fund GP, Ltd. ("Vista GP").  FAC ¶¶ 4-9.

Partners Master Fund, Horizons Master Fund, and Vista Master Fund are Cayman Islands exempted limited partnerships.  FAC ¶¶ 4, 6, 8.  They are hedge funds ("Criterion Hedge Funds" or "Hedge Funds") which were allegedly established by Criterion Capital and the individual defendants in order to "manage their investments and generate substantial fees."  FAC ¶ 13.  Partners GP, Horizons GP, and Vista GP are Cayman Islands corporations, each serving as the general partner of the corresponding (Partners, Horizons, Vista) limited partnership.  FAC ¶¶ 5, 7, 9.  Criterion Capital is the investment adviser for each of the defendant limited partnerships, FAC ¶ 14, which hold title to various securities investments.  According to plaintiff, however, Criterion Capital "controls" the holdings.  FAC ¶ 22.

## SECTION 16 OF THE EXCHANGE ACT

Section 16 of the Exchange Act includes two subsections – § 16(a) and § 16(b). Section 16(a) provides that "[e]very person who is directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security . . . which is registered pursuant to" § 12 of the Act, or who is "a director or an officer of the issuer of such security" must file certain statements/reports with the SEC.  15 U.S.C. § 78p(a)(1).  Initial

ownership statements are filed on SEC Form 3, and statements disclosing changes in beneficial ownership are filed on SEC Form 4.  See 17 C.F.R. § 240.16a-3(a), (g).  There is no private right of action under § 16(a) to compel the required trading reports, see Scientex Corp. v. Kay, 689 F.2d 879, 884 (9th Cir. 1982), and § 16(a) does not form the basis of the claims asserted here.

Under § 16(b), any profit realized by "such beneficial owner, director, or officer by reason of his relationship to the issuer . . . from any purchase and sale, or any sale and purchase, of any equity security of such issuer . . . within any period of less than six months . . . shall be . . . recoverable by the issuer."  15 U.S.C. § 78p(b) (emphasis added).  Section 16(b) was enacted to prevent the unfair use of information which may have been obtained by a beneficial owner, director, or officer by reason of his relationship to the issuer.  Gollust v. Mendell, 501 U.S. 115, 122 (1991); see also Dreiling v. Am. Online, Inc., 578 F.3d 995, 1001 (9th Cir. 2009).  Section 16(b) "imposes strict liability regardless of motive, including trades not actually based on inside information."  Dreiling v. Am. Express Co., 458 F.3d 942, 947 (9th Cir. 2006).

In the present case, none of the defendants is an officer or a director of Veeva, and thus the question of liability under § 16(b) turns in part on defendants' status as "beneficial owners of more than 10 percent of" a class of Veeva securities.  Under SEC Rule 16a-1, 17 C.F.R. § 240.16a-1, in determining whether a person is "a "beneficial owner of more than ten percent of any class of equity securities registered pursuant to section 12 of the Act," the term "beneficial owner" means "any person who is deemed a beneficial owner pursuant to section 13(d) of the Act and the rules thereunder."  17 C.F.R. § 240.16a-1(a)(1).

While a "beneficial owner" can be an individual, § 13(d) of the Act also provides that "[w]hen two or more persons act as a . . . group for the purpose of acquiring, holding, or disposing of securities of an issuer, such . . . group shall be deemed a 'person' for the purposes of this subsection."  15 U.S.C. § 78m(d)(3) (emphasis added).  SEC Rule 13d-5, which was promulgated to implement and clarify § 13(d), defines beneficial ownership

1    by a "group" as follows:

2         When two or more persons <u>agree to act together</u> for the
3         <u>purpose of acquiring, holding, voting or disposing of equity</u>
          <u>securities of an issuer</u>, the group formed thereby <u>shall be</u>
4         <u>deemed to have acquired beneficial ownership</u>, for purposes
          of sections 13(d) and (g) of the [Exchange] Act, as of the date
5         of such agreement, of all equity securities of that issuer
          beneficially owned by <u>any such persons</u>.

6    17 C.F.R. § 240.13d-5(b)(1) (emphasis added).

7         The key inquiry in determining whether a group existed such that beneficial

8    ownership could be imputed to certain shareholders is whether the parties "agree[d] to

9    act together for the purpose of acquiring, holding, voting or disposing of" a firm's

10   securities.  See <u>Dreiling</u>, 578 F.3d at 1002-03 (citing <u>Morales v. Quintel Entm't, Inc.</u>, 249

11   F.3d 115, 122-23 (2nd Cir. 2001) (citing 17 C.F.R. § 240.13d–5(b)(1))).  Generally, courts

12   have concluded that whether such an agreement existed is a question of fact.  See

13   <u>Dreiling</u>, 578 F.3d at 1003 (the agreement "may be formal or informal and may be proved

14   by direct or circumstantial evidence") (citing <u>Morales</u>, 249 F.3d at 124).

15        Thus, under Rule 13d-5, which is incorporated in § 16(b) and Rule 16a-1, where

16   there is such an agreement, the shares held by persons in such a group are aggregated

17   to determine whether the group has a greater than ten percent beneficial ownership in

18   the issuing corporation.  If the aggregate number of shares beneficially owned by the

19   group exceeds ten percent, each member of the group is deemed to be a greater than

20   ten percent beneficial owner and is liable to disgorge profits from transactions by such

21   group member effected within a less than six-month period.

22        Finally, while Rule 16a-1 defines "beneficial ownership" for purposes of § 16 by

23   reference to § 13(d), the SEC has also exempted certain categories of institutions and

24   persons who are not deemed to be beneficial owners even if they otherwise would be

25   covered by § 13(d).  Specifically, Rule 16a-1 provides that certain persons or entities are

26   exempted from the category "beneficial owner of more than ten percent of any class of

27   equity securities registered pursuant to section 12 of the Act" where the securities of such

28   class are "<u>held for the benefit of third parties or in customer or fiduciary accounts in the</u>

United States District Court
Northern District of California

1  ordinary course of business" provided that "such shares are acquired by such institutions

2  or persons without the purpose or effect of changing or influencing control of the issuer

3  . . . ."  17 C.F.R. § 240.16a-1(a)(1) (emphasis added).

4        These exempted persons and entities include "[a]ny person registered as an

5  investment adviser under Section 203 of the Investment Advisers Act of 1940 (15 U.S.C.

6  80b-3) or under the laws of any state" (referred to as "the RIA exemption"); and "[a] . . .

7  control person, provided the aggregate amount held directly by the . . . control person,

8  and directly and indirectly by their subsidiaries or affiliates that are not persons specified

9  in § 240.16a-1(a)(1)(i) through (x), does not exceed one percent of the securities of the

10  subject class" (referred to as "the control-person exemption").  17 C.F.R. § 240.16a-

11  1(a)(1)(iv), (vii) (emphasis added).

12        In promulgating Rule 16a-1, the SEC acknowledged that without such exemptions

13  the listed institutions – which in the ordinary course of their business manage customer

14  and fiduciary accounts – would be subject to liability under § 16(b) if they exercised either

15  their voting or investment power over accounts that when aggregated held over ten

16  percent of a class of equity securities.  See Ownership Reports and Trading by Officers,

17  Directors and Principal Security Holders, Exchange Act Release No. 34-27148, 54 Fed.

18  Reg. 35667, at 35670 (Aug. 18, 1989) (the "1989 Release").  Responding to this concern,

19  the SEC stated that "[t]he proposed revision appears necessary to avoid undue

20  interference with the day-to-day business of banks, brokers, dealers, investment advisers

21  and other specified institutional fiduciaries and custodians."  Id.

22                          **FACTUAL BACKGROUND**

23        Plaintiff alleges that she is the owner of Class A common stock in Veeva.  FAC

24  ¶ 1.  She asserts further that the ten defendants collectively constitute a "group" (which

25  plaintiff refers to throughout the FAC as "the Criterion Group") for purposes of

26  determining beneficial ownership under § 13(d)(3) and § 16(b) of the Exchange Act.  FAC

27  ¶ 21.  Plaintiff claims that at all relevant times, the Criterion Group was a greater than ten

28  percent beneficial owner of Veeva's Class A common stock, and that it garnered short-

1   swing profits disgorgeable to Veeva.  Id.

2       Plaintiff alleges that defendants' membership in the § 13(b) group is shown by the

3   following:  (a) Criterion Capital acknowledged in its Form ADV that it manages the three

4   Hedge Funds; (b) Criterion Capital, directly or indirectly, controls the Hedge Funds'

5   holdings in Veeva through a "master feeder structure" as alleged in FAC ¶ 14 – that is,

6   each of the three Hedge Funds act as a "master feeder" through which the other three

7   defendant Funds invest substantially all their assets, and Criterion Capital acts as the

8   general partner of the Hedge Funds; (c) SEC filings were made collectively on behalf of

9   all group members; and (d) Criterion Capital provides the defendant Funds with office

10  space, utilities, and clerical and administrative services, including payment of the salaries

11  of all personnel providing those services.  FAC ¶ 22.

12      Plaintiff alleges that the Hedge Funds acted together with Criterion Capital, their

13  common investment adviser, and an appointed agent, to manage the Hedge Funds'

14  trading in Veeva's Class A common stock.  FAC ¶ 23.  She asserts that this "investment

15  structure" establishes that the Hedge Funds were members of a group, and also that the

16  Criterion Group members (i.e., all the defendants) have beneficial ownership of Veeva's

17  equity securities for purposes of disgorgement of their short-swing profits.  Id.

18      Plaintiff claims that between March 26 - September 12, 2014, while the Criterion

19  Group was a greater than 10% beneficial owner of Veeva's Class A common stock, each

20  of the Hedge Funds "purchased shares of Class A Common Stock at various times,

21  purchasing a total of 3.6 million shares."  FAC ¶ 24.  Plaintiff asserts further that between

22  September 30 - December 31, 2014, while the Criterion Group "was a greater than 10%

23  beneficial owner," the Hedge Funds "each sold shares at various times, selling

24  collectively approximately 1.1 million shares of Class A [c]ommon [s]tock."  Id.  Finally,

25  plaintiff alleges that between December 31, 2014 - April 10, 2015, the Criterion Group

26  sold "its" remaining stake of 6,344,132 shares of Class A common stock, "certain of

27  which sales occurred while the Criterion Group was a greater than 10% beneficial

28  owner."  Id.

United States District Court
Northern District of California

United States District Court
Northern District of California

1      Plaintiff asserts that had defendants reported these transactions as required by

2  § 16(a), the profits they garnered from the purchase and sale of Class A common stock

3  could easily be computed.  However, plaintiff alleges, the Criterion Group was engaged in

4  a "scheme to hide" the Hedge Funds' beneficial ownership to avoid proper accounting as

5  well as disgorgement under § 16(b).  FAC ¶ 25.  Thus, she claims, it is not presently

6  possible to "compute the precise amount of short-swing profits garnered by the Criterion

7  Group from its short-swing trading of shares of Class A common stock."  Id.  She asserts

8  nevertheless that "[m]any of these purchases and sales will be matchable as they were

9  made within six months of each other at markedly different prices," id., though she does

10 not attempt to match them.  However, "[b]ased on the sketchy information contained in

11 the Criterion Group's Schedule 13G and Form 13F filings," as well as the trading prices

12 during that period, she estimates that defendants "likely garnered in excess of $10 million

13 dollars in disgorgeable short-swing profits."  Id.

14      Plaintiff alleges that pursuant to § 16(a) of the Exchange Act and Rule 16a-3, the

15 Criterion Group was required to file an SEC Form 3 to alert the market when "it" first

16 acquired more than ten percent of Class A common stock, and was then required to file

17 an SEC Form 4 to report its purchases and sales of Class A common stock while "it" was

18 a greater than ten percent holder.  FAC ¶ 26.  Plaintiff asserts that the Criterion Group did

19 neither, and instead "devised a scheme to hide the true nature of their [sic] beneficial

20 ownership."  Id.

21      As noted above, the definition of "beneficial owner" in Rule 16a-1(a)(1) permits

22 certain institutions or persons to exclude from their 10% ownership calculations securities

23 they beneficially own if certain conditions are met.  See 17 C.F.R. § 140.16a-1(a)(1).  To

24 qualify, the securities must be held for the benefit of third parties in customer or fiduciary

25 accounts in the ordinary course of business, and the shares must have been acquired by

26 such institutions or persons without the purpose or effect of changing or influencing

27 control of the issuer.  Id.  Among the exemptions are the "RIA exemption" and the

28 "control-person exemption."  See 17 C.F.R. § 140.16a-1(a)(1)(v), (vii).

1    Plaintiff alleges that the Criterion Group employed a "shell game" to funnel

2  beneficial ownership from the Hedge Funds (which she asserts are subject to § 16) to

3  Criterion Capital, an RIA.  She claims that this "artificial conveyance" was designed so

4  that the Criterion Group could claim an exemption for those shares because they

5  purportedly were now beneficially owned by an exempt entity (an RIA); and that it also

6  enabled the Criterion Group to claim that the individual defendants did not have beneficial

7  ownership because they are exempt as "control persons" of Criterion Capital.  Thus,

8  plaintiff alleges, this "ploy" was designed to make beneficial ownership of millions of

9  shares of Veeva stock "disappear from regulatory oversight."  But, plaintiff contends, this

10  "scheme" is ineffective for at least two reasons.  FAC ¶ 28.

11    First, plaintiff asserts, case law holds that conveyances, such as "the Criterion

12  Group's attempt to divest itself of beneficial ownership of the Class A Common Stock by

13  conveying ownership to Criterion Capital," are ineffective.  She claims that relying on

14  such "contrived divestitures," hedge fund managers who have established a small group

15  of hedge funds to acquire greater than 10% beneficial ownership positions, with

16  presumed access to inside information, have used these "artifices" to evade their § 13(d)

17  and § 16(a) reporting obligations and to conceal their short-swing trading and profits, but

18  that courts have held that a purchaser cannot avoid § 16(b) liability by "delegating voting

19  and investment authority to a third party."  FAC ¶ 29.  She alleges that in the present

20  case, the Hedge Funds' "effort to avoid §§ 16(a) and (b) to convey away all of their

21  beneficial ownership of Class A Common Stock to Criterion Capital, their investment

22  adviser, does not shield the funds from liability."  Id.

23    Second, plaintiff alleges, notwithstanding any such attempted delegation of

24  beneficial ownership, the Criterion Group would still be liable because the "key group

25  members" – individual defendants Lord, Riley and Fortune – are not entitled to an

26  exemption.  Plaintiff asserts that because Lord, Riley and Fortune are the sole members

27  and portfolio managers of Criterion Capital and made all of the trading decisions relating

28  to the Class A Common Stock, they "control" not only exempt members of the Criterion

United States District Court
Northern District of California

8

1   Group such as Criterion Capital, but also the non-exempt members of the Group.  As

2   such, plaintiff contends, they have beneficial ownership of all of the Criterion Funds'

3   holdings in Veeva's equity securities and cannot rely on a control person exemption.

4   FAC ¶ 30.

5         In a section entitled "The Criterion Group Deceives the Marketplace," plaintiff

6   alleges that the Criterion Group not only tried to "hide" its beneficial ownership by

7   transfers to an exempt entity of its own creation, but also ignored its obligations to make

8   timely filings and amendments as required.  Plaintiff asserts that the Criterion Group filed

9   its initial Schedule 13G on April 4, 2014, reporting a "Date of Event Which Requires Filing

10  of this Statement" of March 26, 2014.  According to plaintiff, this initial Schedule 13G

11  reported beneficial ownership of 15.8%. Thus, plaintiff alleges, the Criterion Group "kept

12  the investing public in the dark" as it amassed a huge stake in Veeva in "brazen violation"

13  of the Williams Act.[1]  Plaintiff contends that under Rules 13d-1(c) and 13d-2(d), the

14  Criterion Group was obligated to file its initial Schedule 13G within 10 days of acquiring

15  beneficial ownership of greater than 5% and was obligated to then file an amendment

16  promptly upon acquiring beneficial ownership of greater than 10%.  FAC ¶ 31.

17        Plaintiffs claim that the Criterion Group continued to "keep the investing public in

18  the dark" as it continued to amass an even larger stake in Veeva, filing an Amendment

19  No. 1 to its Schedule 13G on April 17, 2014, reporting beneficial ownership of 19.9% and

20  reporting a "Date of Event Which Requires Filing of this Statement" of April 3, 2014.

21  Plaintiffs assert that because the triggering date was April 3, 2014, the Criterion Group

22  delayed its filing by two full weeks, in clear violation of the requirement to file its

23  amendment "promptly" (citing SEC Rule 13d-2(d) and SEC Release 34-39538 at n.14

24  (Jan. 12, 1998)).  FAC ¶ 32.

25        Plaintiff asserts that because the Criterion Group became a greater than ten

26  percent beneficial owner of Veeva's Class A Common Stock at least as early as March

27

28  _____

    [1]   Plaintiff provides no further explanation of this purported violation of the Williams Act.

United States District Court
Northern District of California

1   26, 2014, the Criterion Group was obligated to file an initial Form 3 under § 16(a) of the

2   Exchange Act within 10 days and, thereafter, to file Forms 4 to report any transactions in

3   the Class A Common Stock within two business days of any such transactions.  Plaintiff

4   contends that the Criterion Group failed to make any Form 3 or Form 4 filings.  FAC ¶ 33.

5   Finally, plaintiff asserts, the Criterion Group was required under Rule 13d-2(d) to

6   file an amendment to its Schedule 13G filing promptly to report any 5% change in its

7   beneficial ownership.  However, plaintiff contends, the Criterion Group filed its

8   Amendment No. 2 to its Schedule 13G on April 10, 2015 reporting that it had completely

9   divested its ownership stake, again (according to plaintiff) "keeping the investing public in

10  the dark," after its most recent filing of its Amendment No. 3 to Schedule 13G, filed on

11  February 17, 2015 had reported beneficial ownership of 10.7%.  FAC ¶ 34.

12  Plaintiff asserts two causes of action – a claim under § 16(b) against "the Criterion

13  Group" (i.e., all defendants), FAC ¶¶ 35-37; and a claim under § 16(b) against Criterion

14  Capital, Partners GP, Horizons GP, Vista GP, Lord, Riley, and Fortune (i.e., all

15  defendants except the three Hedge Funds), FAC ¶¶ 38-41.  Defendants now seek an

16  order dismissing the FAC for failure to state a claim.

**DISCUSSION**

17

18  A.    Legal Standard

19  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

20  sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191,

21  1199-1200 (9th Cir. 2003).  Review is limited to the contents of the complaint.  Allarcom

22  Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To

23  survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy

24  only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which

25  requires that a complaint include a "short and plain statement of the claim showing that

26  the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

27  The allegations in the complaint "must be enough to raise a right to relief above

28  the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations

United States District Court
Northern District of California

United States District Court
Northern District of California

1    and quotations omitted).  A complaint may be dismissed under Rule 12(b)(6) for failure to

2    state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged

3    sufficient facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953,

4    959 (9th Cir. 2013).  While the court is to accept as true all the factual allegations in the

5    complaint, legally conclusory statements, not supported by actual factual allegations,

6    need not be accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also In re

7    Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

8        A motion to dismiss should be granted if the complaint does not proffer enough

9    facts to state a claim for relief that is plausible on its face.  See Twombly, 550 U.S. at

10   558-59.  A claim has facial plausibility when the plaintiff pleads factual content that allows

11   the court to draw the reasonable inference that the defendant is liable for the misconduct

12   alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not

13   permit the court to infer more than the mere possibility of misconduct, the complaint has

14   alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. at 679.  In the

15   event dismissal is warranted, it is generally without prejudice, unless it is clear the

16   complaint cannot be saved by any amendment.  See Sparling v. Daou, 411 F.3d 1006,

17   1013 (9th Cir. 2005).

18       Although the court generally may not consider material outside the pleadings when

19   resolving a motion to dismiss for failure to state a claim, the court may consider matters

20   that are properly the subject of judicial notice.  Knievel v. ESPN, 393 F.3d 1068, 1076

21   (9th Cir. 2005); Lee v. City of L.A., 250 F.3d 668, 688-89 (9th Cir. 2001).  Additionally, the

22   court may consider exhibits attached to the complaint, see Hal Roach Studios, Inc. v.

23   Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), as well as

24   documents referenced extensively in the complaint and documents that form the basis of

25   a the plaintiff's claims.  See No. 84 Employer-Teamster Jt. Counsel Pension Tr. Fund v.

26   Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

27       Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake

28   shall be stated with particularity."  Fed. R. Civ. P. 9(b).  "[A]llegations of fraud must be

specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged "so that they can defend against the charge and not just deny that they have done anything wrong." Sanford v. MemberWorks, Inc., 625 F.3d 550, 558 (9th Cir. 2010) (citation and quotation omitted).  Rule 9(b) requires that falsity be pled with specificity, including an account of the time, place, and content of the false representations as well as the identities of the parties to the misrepresentations.  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted).

C.    Defendants' Motion

Defendants seek dismissal of the FAC for failure to state a claim, and for failure to allege fraud with particularity as required by Rule 9(b).  The elements of a claim under § 16(b) are (1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than 10 percent of any one class of the issuer's securities (4) within a 6-month period (5) resulting in profit.  See Dreiling v. Am. Online, Inc., 578 F.3d 995, 1001 (9th Cir. 2009).

In their motion, defendants argue that the FAC is deficient with regard to pleading the first four elements of a § 16(b) claim.  Defendants make four main arguments, the first three of which relate to whether the FAC adequately alleges a purchase and sale by a beneficial owner of more than 10 percent of any one class of Veeva securities, and the fourth of which relates to whether the FAC adequately alleges a purchase and sale within six months.

In their first main argument, defendants assert that Criterion Capital and the three individual defendants are outside the reach of § 16(b) – and cannot be considered "beneficial owners" – because they are exempt under the RIA exemption and the control-person exemption, respectively.  They argue that plaintiff does not allege that Criterion Capital did not hold the securities for third parties or in customer or fiduciary accounts, and that there is no allegation that Criterion had any intention to control Veeva.  They note further that by its terms, the RIA exemption applies to "any person registered as an investment adviser" under § 203 of the Investment  Adviser Act, and argue that there is

United States District Court
Northern District of California

1    no dispute that Criterion Capital is a registered investment advisor.

2         With regard to the control-person exemption, defendants assert that  the

3    exemption applies to any "control person" provided the aggregate amount held by the

4    control person does not exceed one percent of the securities of the subject class.

5    Moreover, they assert, the individual defendants are control persons of Criterion Capital,

6    but not of the Hedge Funds, as Criterion Capital's Form ADV shows that each of those

7    funds is controlled by its own general partner, governed by a board of independent

8    directors.

9         In opposition, plaintiff argues she does not bear the burden of establishing in the

10   complaint that the Rule 16a-1 exemptions do not apply, because the exemptions are

11   affirmative defenses.  In addition, with regard to Criterion Capital, plaintiff asserts that the

12   RIA exemption does not apply because Criterion Capital held Veeva securities for its own

13   benefit, and not exclusively for the benefit of third parties, or, alternatively, because the

14   question whether Criterion Capital held the Veeva securities for the benefit of third parties

15   is a question of fact that cannot be resolved on a 12(b)(6) motion.

16        With regard to the individual defendants, plaintiff asserts that they do not meet the

17   requirements of the control-person exemption because the exemption requires that the

18   control person of the RIA not hold more than 1% of the outstanding class of securities,

19   and any determination of whether the individual defendants satisfy the requirements of

20   this exemption necessitates discovery and a full factual record.

21        The question whether plaintiff has adequately pled that the exemptions do not

22   apply is relevant to the present Rule 12(b)(6) motion.  Plaintiff alleges in the FAC that the

23   "Criterion Group" employed a "shell game" to "funnel beneficial ownership from the

24   investments funds . . . to Criterion Capital, a registered investment advisor," and to

25   "divest itself of beneficial ownership of Class A [c]ommon [s]tock by conveying ownership

26   to Criterion Capital," so that Criterion Capital "could claim an exemption for those shares

27   because they purportedly were now beneficially owned by an exempt entity[,]" which also

28   "enabled the Criterion Group to claim that the individual defendants did not have

13

beneficial ownership because they are exempt as 'control persons' of Criterion Capital."
See FAC ¶¶ 28-29.

Even though the exemptions may technically be affirmative defenses, they can also be viewed as elements of the claim because they relate to the definition of "beneficial owner of more than ten percent of any class of equity securities registered pursuant to section 12 of the Act," and thus must be adequately pled.  In addition, it is the rule in the Ninth Circuit that when an affirmative defense is obvious on the face of the complaint, a defendant can raise that defense in a motion to dismiss.  See Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 902 (9th Cir. 2013); see also Gomez v. Quicken Loans, Inc., 629 Fed. App'x 799, 801 (9th Cir. 2015).

The court finds, for the reasons argued by defendants, that the FAC fails to allege facts sufficient to create a plausible inference that the RIA exemption does not apply to Criterion Capital, and that the control-person exemption does not apply to the individual defendants.

In their second main argument, defendants contend that the FAC does not adequately allege the existence of a § 13(d) "group" for purposes of determining "beneficial ownership."  Defendants argue that the facts that plaintiff claims support the allegation that defendants constituted a "group" simply describe a relationship between Criterion Capital and the three Hedge Funds – primarily a relationship between an investment adviser and its client(s) – not a relationship among all the defendants; that apart from the fraud-based allegations, the complaint alleges no facts showing an "an agreement" for the purpose of "acquiring, holding, or disposing of" Veeva securities; and that as for the fraud-based allegations – which amount to an assertion of a fraudulent conspiracy – the facts are not pled with particularity as required by Rule 9(b).

In the FAC, plaintiff alleges that all ten defendants collectively constitute the "Criterion Group," for purposes of determining "beneficial ownership" under § 13(d)(3) and § 16(b) of the Exchange Act.  FAC ¶ 21.  Plaintiff claims that the "Criterion Group" is a greater than ten percent beneficial owner of Veeva's Class A common stock, and that it

14

United States District Court
Northern District of California

1    garnered short-swing profits disgorgeable to Veeva.  FAC ¶ 21.  Plaintiff asserts that

2    certain "facts" support the claim that the ten defendants are members of a § 13(d)

3    "group."

4         As indicated above in the "Factual Background" section, those facts are that

5    Criterion Capital manages the Hedge Funds; that Criterion Capital controls the Hedge

6    Funds' holdings in Veeva through a "master feeder structure;" that SEC filings were made

7    collectively on behalf of all "group" members; that the Hedge Funds purchased and sold

8    shares of Veeva Class A common stock at the same time; that Lord, Riley, and Fortune

9    are members and portfolio managers of Criterion Capital; and that Criterion Capital

10   provides the Hedge Funds with office space, utilities, and research, clerical, and

11   administrative services, including payment of the salaries of all personnel providing those

12   services.  FAC ¶ 22.

13        Plaintiff asserts that this "investment structure" – the Hedge Funds acting together

14   through Criterion Capital, their common investment adviser, and an appointed agent, to

15   manage the Hedge Funds' trading in Veeva's Class A common stock – "establishes" that

16   the Hedge Funds are members of a "group" and also that the Criterion Group members

17   (i.e., all defendants) have beneficial ownership of Veeva's equity securities for purposes

18   of disgorgement of their short-swing profits.  FAC ¶ 23.

19        Plaintiff does not allege that each of the defendants purchased and sold shares of

20   Veeva Class A common stock within a six-month period – just that the Hedge Funds did

21   so.  See FAC ¶ 24.  However, plaintiff nonetheless asserts that because "all purchases

22   and sales for each of the Criterion Group members were directed by Lord, Riley, and

23   Fortune," and because of the "investment structure" alluded to in ¶ 23, plus the "facts"

24   alleged in ¶ 22, a group consisting of the ten defendants "was formed and was operative"

25   within the meaning of § 13(d) and § 16(b).  See FAC ¶¶ 21-23.

26        The FAC also includes a series of allegations suggesting the existence of a

27   fraudulent conspiracy.  Among these fraud-based allegations are the assertions, e.g., that

28   the members of the "Criterion Group" did not file § 16(a) disclosures, which plaintiff

describes as "an artifice . . . to hide their trading in Veeva common stock," FAC ¶ 19; that the "Criterion Group" was "engaged in a scheme to hide the Criterion Funds' beneficial ownership to avoid proper reporting as well as disgorgement under § 16(b)," FAC ¶ 25; that the "Criterion Group" defendants "devised a scheme to hide the true extent of their beneficial ownership," FAC ¶ 26; that the "Criterion Group defendants" employed a "shell game" to "funnel beneficial ownership from the [Hedge Funds] . . . to Criterion Capital, a registered investment adviser," FAC ¶ 28; that this "artificial conveyance was designed so that the Criterion Group could claim an exemption for those shares because they were now beneficially owned by an exempt entity" – a "ploy" that was "designed to make beneficial ownership of millions of shares of Veeva stock to simply disappear from regulatory oversight," FAC ¶ 28; that the Hedge Funds used "artifices" to "avoid §§ 16(a) and (b) to convey away all of their beneficial ownership of Class A common stock to Criterion Capital, their investment adviser, FAC ¶ 29; and that the "Criterion Group" kept "the investing public in the dark" as it amassed a huge stake in Veeva, and then amassed an even larger stake in Veeva as it delayed filing its Schedule 13G, FAC ¶¶ 31, 32, 34.

In opposition, plaintiff asserts that "courts are reluctant to dismiss such claims before discovery."  Plaintiff also argues that the facts plausibly allege that all ten defendants were members of a "group," based on the nature of the various relationships among them.  As for the allegations of fraud, plaintiff contends that Rule 9(b) does not apply because the "fraud" allegations do not "permeate" the complaint, and can easily be stricken or severed.  At the hearing, plaintiff's counsel presented the court with a marked-up copy of the FAC with some portions of the "fraud" allegations highlighted, and asserted that those allegations could essentially be disregarded without affecting the substance of the complaint.

Although the FAC is far from clear, the gist of plaintiff's claim appears to be that Criterion Capital (the investment advisor of the Hedge Funds) was a limited liability company, and its members were the three individual defendants; that the individual defendants "controlled" the purchases and sales by the Hedge Funds; that the Hedge

16

Funds "acted together" with Criterion Capital (their investment adviser) and the individual

defendants (who were the members and portfolio managers of the Hedge Funds); and

that Criterion Capital was also the investment manager for the "feeder funds," and

caused the "feeder funds" to invest all their assets in the Hedge Funds.

Nevertheless, to say that the Hedge Funds "acted together" with Criterion Capital,

and that the individual defendants "directed" the purchases and sales is not sufficient to

support a claim that all ten defendants constituted a "group" for purposes of determining

beneficial ownership.  Notably, apart from the fraud-based allegations, discussed below,

plaintiff does not allege an "agreement" among the purported members of the "group,"

much less assert that the defendants "agree[d] to act together for the purpose of

acquiring, holding, voting, or disposing of" Veeva's securities.  And as for the fraud-based

allegations, they are insufficient to support the claim because they are not pled with

particularity.  It is true that the question whether there actually was such an agreement is

a question of fact, but the FAC fails to allege facts sufficient to support a plausible

inference that there was an agreement in the first instance.

In their third main argument, defendants assert that the Veeva Class A and Class

B shares should be considered together when determining ownership percentage.

According to defendants, apart from the fact that the Class A shares are a low-voting

power form of stock, and the Class B shares are a high-voting power form of stock, the

shares are otherwise identical and should be considered in the same "class."  They also

argue because the Class B shares (primarily owned by officers, directors, and other

insiders) have 10 times the voting power of the Class A shares (shares generally offered

to the public), a stockholder that held 10 percent of Class A shares would have less than

1% voting power in Veeva, and could not be said to have any influence over Veeva's

operations, and thus not be considered an "insider."

In response, plaintiff contends that Class A is one "class" of equity stock and Class

B is a separate "class" of equity stock – and that § 16(b) refers to "class" of securities and

does not suggest that it is appropriate to combine "classes" of securities.  Plaintiff also

17

1    asserts that the two classes are not otherwise identical, as the Class A stock is publicly

2    traded (i.e., is "registered" under § 12), while the Class B is not, and in addition (as

3    defendants have acknowledged) the two classes have different voting rights.  Finally,

4    plaintiff contends, because the "Criterion Group" was the beneficial owner of as much as

5    19.9% of the Class A stock, and so could have had a material impact on the value of

6    management's equity compensation as well as on the value of the Class B common

7    stock, it is incorrect to presume that the "Criterion Group" was not an "insider."

8          The court interprets § 16(b) as requiring that the "beneficial owner" be the owner

9    of 10 percent or more of a single class of the issuer's stock.  The court finds further that

10   the Class A stock and the Class B stock are two different classes of stock.  Thus, the

11   allegations are sufficient for pleading purposes.

12         In their fourth main argument, defendants assert that the complaint does not state

13   a claim under § 16(b) because plaintiff does not allege specific matching purchases and

14   sales within a six-month period.

15         In response, plaintiff argues that that information is not available because the

16   "Criterion Group" did not file the § 16(a) disclosures it was required to file as a 10 percent

17   beneficial owner, and that information about details of purchases and sales is therefor

18   available only from the defendants.

19         As detailed above, plaintiff alleges that during a five-and-a-half month period

20   (March 26, 2014, to September 12, 2014), the three Hedge Funds purchased shares of

21   Veeva's Class A common stock "at various times," and that during a six-and-a-half month

22   period (September 30, 2014, to April 10, 2014), the three Hedge Funds sold their "entire

23   stake" of shares of Veeva's Class A common stock "at various times."  FAC ¶ 24.

24         While it is true that the complaint does not allege specific purchases that match

25   sales, which occurred within six months of each other, the court nevertheless finds the

26   allegations sufficient for pleading purposes.

27                                    **CONCLUSION**

28         The motion is GRANTED in part and DENIED in part.  In accordance with the

United States District Court
Northern District of California

1    foregoing, the court will permit leave to amend to allege facts sufficient to allow the court

2    to draw the reasonable inference that the RIA and control-person exemptions do not

3    apply, and that all ten defendants formed a § 13(d) "group" for purposes of determining

4    ten percent beneficial ownership of Veeva's Class A common stock.

5           The court is not persuaded that the "fraud" allegations do not permeate the

6    complaint and are easily severable, and it is not clear what will remain once the

7    allegations of fraud are excised.  Nevertheless, based on the representation by plaintiff's

8    counsel that plaintiff is not asserting a claim of fraud, leave to amend is granted to delete

9    all references to fraud or deceit, including (but not limited to) allegations in FAC ¶¶ 19,

10   25-26, 28-29, 31-32, and 34 that defendants were engaging in a "shell game;" that they

11   were involved in a "scheme" to "hide" the true extent of their beneficial ownership and to

12   "keep[ ] the investing public in the dark;" that they "used . . . artifices to evade" their

13   reporting requirements and "hide their trading in Veeva common stock and avoid

14   disgorgement of their profits;" and that they were engaged in a "ploy . . . designed to

15   make beneficial ownership of millions of shares of Veeva stock simply disappear from

16   regulatory oversight."

17          Any amended complaint shall be filed no later than August 2, 2016.  No new

18   claims or parties may be added without agreement of the defendants or leave of court.

19          Finally, the court GRANTS defendants' request to stay discovery until after the

20   pleadings are settled.

21

22   **IT IS SO ORDERED.**

23   Dated:  July 5, 2016

24                                                        _____

25                                                        PHYLLIS J. HAMILTON
                                                          United States District Judge

26

27

28

United States District Court
Northern District of California