UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACEY GREENFIELD,<br><br>    Plaintiff,<br><br>    v.<br><br>CRITERION CAPITAL MANAGEMENT, LLC, et al.,<br><br>    Defendants. | Case No. 15-cv-3583-PJH<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

Defendants' motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the second amended complaint ("SAC") for failure to state a claim came on for hearing before this court on December 7, 2016. Plaintiff appeared by her counsel Glenn F. Ostrager, Paul D. Wexler, and Willem F. Jonckheer. The Criterion defendants appeared by their counsel Michael Swartz and Roger Mead. Nominal defendant Veeva Systems Inc. appeared by its counsel Kelley Kinney. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion.

## BACKGROUND

Plaintiff Stacey Greenfield brings this shareholder derivative action under § 16(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78p(b), on behalf of nominal defendant Veeva Systems, Inc. ("Veeva"). "Congress passed § 16(b) of the 1934 Act to 'prevent the unfair use of information which may have been obtained by [a] beneficial owner, director, or officer by reason of his relationship to the issuer.'" Gollust v. Mendell, 501 U.S. 115, 122 (1991) (quoting 15 U. S. C. § 78p(b)).

Section 16(b) permits the issuer to recover any profit realized by an "insider" from "any purchase and sale, or any sale and purchase, of any equity security of such issuer . . . within any period of less than six months." 15 U.S.C. § 78p(b); Strom v. United States, 641 F.3d 1051, 1056 (9th Cir. 2011) ("Section 16(b) . . . is a prophylactic rule prohibiting corporate insiders from profiting on 'short-swing' securities trades-specifically, on a purchase and a sale of their company's securities made within any period of less than six months."); Dreiling v. Am. Online Inc., 578 F.3d 995, 1001 (9th Cir. 2009) (under § 16(b), any "beneficial owner" of more than ten percent of any class of equity securities issued by an entity that issues registered equity securities – or any officer, or director of such an entity – must disgorge to the issuer any profit realized from the purchase and sale, or sale and purchase, within a six-month period, of any equity security by the issuer).

In the present case, none of the defendants is an officer or director of Veeva, and thus the question of liability under § 16(b) turns in part on each defendant's status as a "beneficial owner" of more than ten percent of a class of Veeva securities. The Exchange Act does not define what makes a person a "beneficial owner" as the term is used in § 16(b). For purposes of § 16, SEC Rule 16a-1 defines "beneficial owner" of more than ten percent of any class of equity securities as meaning "any person who is deemed a beneficial owner" pursuant to § 13(d) of the Exchange Act and the rules promulgated thereunder. See 17 C.F.R. § 240.16a-1(a)(1). SEC Rule 13d-3, which was promulgated to implement and clarify § 13(d), defines "beneficial owner" as "any person who[ ] directly or indirectly . . . has or shares: (1) [v]oting power which includes the power to vote, or to direct the voting of, such security; and/or (2) [i]nvestment power which includes the power to dispose, or to direct the disposition of, such security." 17 C.F.R. § 240.13d-3(a)(1), (2).

While Rule 16a-1 defines "beneficial ownership" by reference to § 13(d), it also removes from § 16's reach certain categories of persons who otherwise would be covered by § 13(d). Of relevance here, under Rule 16a-1(a)(1), neither a registered investment adviser nor a parent holding company or "control person" will be deemed the

2

beneficial owner of securities held "for the benefit of third parties or in customer or fiduciary accounts in the ordinary course of business," as long as such shares are acquired "without the purpose or effect of influencing control of the issuer or engaging in any arrangement subject to Rule 13d-3(b)." 17 C.F.R. § 240.16a-1(a)(1)(v), (vii). Additionally, to be exempt, a control person may not own more than 1% of the outstanding shares of the relevant issuer, either directly or indirectly by subsidiaries or affiliates. See Rule 16a-1(a)(1)(vii).

Section 13(d) also provides that in certain circumstances, where shares are beneficially owned by more than one person or entity, those persons or entities may be considered together as a "group," and the shares will be aggregated for purposes of determining whether § 16's ten-percent beneficial-ownership threshold is reached. That is, "[w]hen two or more persons act as a . . . group for the purpose of acquiring, holding, or disposing of securities of an issuer, such . . . group shall be deemed a 'person' for purposes of" determining beneficial ownership. 15 U.S.C. § 78m(d)(3). Congress intended this provision to prevent insiders from evading the disclosure requirement by pooling their voting or other interests in the securities of the issuer. Dreiling, 578 F.3d at 1002.

"[C]ourts have concluded that the key inquiry in determining whether a group existed such that beneficial ownership could be imputed to certain shareholders is whether the parties 'agree[d] to act together for the purpose of acquiring, holding, voting, or disposing of' a firm's securities." Id. (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 122-23 (2nd Cir. 2001) (citing 17 C.F.R. § 240.13d-5(b)(1)) (emphasis added). Thus, Rule 13d-5 expressly requires an "agreement" as a condition to formation of a "group." Id. at 1003 (citation omitted).

Plaintiff, an investor who holds shares of Veeva Class A common stock, filed this suit after Veeva rejected her demand to bring suit directly against the defendants. SAC ¶¶ 6, 53. Plaintiff seeks disgorgement of "short-swing" profits which she alleges were recovered by the "Criterion defendants." Plaintiff asserts that these defendants acted

3

together as a "group" to realize short-swing profits in trading Veeva Class A common stock, in violation of § 16(b). SAC ¶¶ 1, 18, 27-33.

The Criterion defendants are Criterion Capital Management, LLC ("Criterion Capital"); three individual members of Criterion Capital – Christopher H. Lord, David Riley, and Tomoko Fortune; three hedge funds organized as Cayman Islands exempted limited partnerships – Criterion Capital Partners Master Fund, L.P. ("Partners Master Fund"), Criterion Horizons Master Fund, L.P. ("Horizons Master Fund"), and Criterion Vista Master Fund, L.P. ("Vista Master Fund") (collectively, the "Master Funds"), allegedly established by Criterion Capital and the three individual defendants; and three Cayman Islands corporations, each serving as the general partner of the corresponding limited partnership Master Funds – Criterion Master Partners Master Fund GP, Ltd. ("Partners GP," general partner of Partners Master Fund), Criterion Horizons Master Fund GP, Ltd. ("Horizons GP," general partner of Horizons Master Fund), and Criterion Vista Master Fund GP, Ltd. ("Vista GP," general partner of Vista Master Fund. See SAC ¶¶ 8-16.

Criterion Capital is a California limited liability company, and is registered as an investment adviser (or "RIA") with the SEC. SAC ¶ 8. The individual defendants are members and portfolio managers of Criterion Capital, SAC ¶ 16, but neither the individual defendants nor Criterion Capital serves as a general partner (or as a director of a general partner) of any of the Master Funds. SAC ¶¶ 10, 12, 14, 15. Each of the three defendant general partners is managed by the same group of directors – nonparties Philip Cater, John Ackerley, and Darren Stainrod. SAC ¶ 15.

During the relevant time period, Criterion Capital and the Master Funds were parties to investment management agreements ("standard IMAs"), pursuant to which the Master Funds held title to various securities investments that Criterion Capital held in "discretionary" accounts. See SAC ¶¶ 2, 17-18, 27, 29. Pursuant to those contracts, Criterion Capital had "discretionary" authority over the Master Funds' assets, including the Veeva securities at issue in this litigation, and made all the investment decisions on behalf of the Master Funds. See Criterion Capital's 3/31/2015 Form ADV, Declaration of

4

Michael E. Swartz ("Swartz Decl."), Exh. C.  However, Criterion Capital and its members held only 2%, 5%, and 12%, of the respective Master Funds.  SAC ¶ 20.  That is, 98% of the investors in the Partners Master Fund were unrelated to Criterion Capital; 95% of the investors in the Horizons Master Fund were unrelated to Criterion Capital; and 88% of the investors in the Vista Master Fund were unrelated to Criterion Capital.

The SAC also includes allegations relating to certain entities through which investors could invest capital in the Master Funds – the six "Feeder Funds."  According to plaintiff, each Master Fund is associated with a "Domestic Feeder Fund" (organized as a Delaware limited partnership) and an "Offshore Feeder Fund" (organized as a Cayman Islands exempted company).  SAC ¶¶ 17, 22, 25.  Plaintiff alleges that the Feeder Funds invest "substantially all" their assets in the Master Funds that respectively bear their common names, SAC ¶ 25 & Exh. A.  Plaintiff does not allege that the Feeder Funds hold title to any securities or that they make any investment decisions.  Criterion Capital allegedly serves as investment adviser to the Feeder Funds.  SAC ¶ 22.  There is no allegation that this structure is illegal; moreover, the Feeder Funds are not parties to this lawsuit, and are not alleged to be the beneficial owners of any Veeva securities.

Criterion Capital also allegedly serves as the general partner of the Domestic Feeder funds, which are limited partnerships.  SAC ¶ 26.  According to plaintiff, this means that the members of Criterion Capital (i.e., the three individual defendants) and the Domestic Feeder Funds were "affiliates" of each other.  Id.  However, defendants assert in their motion to dismiss that the Feeder Funds simply serve as the entry point for investors into the Master Funds.

The original complaint was filed on June 24, 2015, in the U.S. District Court for the Southern District of New York.  On August 3, 2015, pursuant to stipulation, the case was ordered transferred to this district.  Defendants filed a motion to dismiss on November 19, 2015.  In response, on December 9, 2015, plaintiff filed the FAC.  On February 1, 2016, defendants filed a motion to dismiss the FAC, for failure to state a claim, and for failure to allege fraud with particularity.

5

In the FAC, plaintiff asserted claims under § 16(b) against Criterion Capital, the three individual defendants, the three Master Funds, and the three general partners of the Master Funds. They alleged that the Criterion defendants collectively constituted a "group" ("the Criterion Group") for purposes of determining "beneficial ownership" under § 13(d)(3) and § 16(b), and which they alleged was a greater than ten percent beneficial owner of Veeva's Class A common stock; and that defendants had, in essence, structured Criterion Capital and the various funds as part of a scheme to conceal their short-swing trades and profits and to make beneficial ownership of millions of shares of Veeva stock disappear from regulatory oversight.

In their motion to dismiss, defendants argued, first, that the allegations of fraud were not pled with particularity as required by Federal Rule of Civil Procedure 9(b); second, that Criterion Capital and the three individual defendants are outside the reach of § 16(b) and cannot be considered "beneficial owners," because they are exempt under the RIA exemption and the control-person exemption, respectively; third, that the FAC did not allege facts sufficient to show the existence of a § 13(d) "group" for purposes of determining "beneficial ownership;" fourth, that the Veeva Class A and Class B shares should be considered together when determining ownership percentage; and fifth, that the FAC did not state a claim under § 16(b) because it did not allege specific purchases that matched sales occurring within six months, but instead alleged only amounts of purchases and amounts of sales.

In an order issued on July 5, 2016, the court granted the motion as to the first three arguments and denied the motion as to the fourth and fifth arguments. The dismissal was with leave to amend to plead facts sufficient to create a plausible inference that the RIA exemption does not apply to Criterion Capital, and that the control-person exemption does not apply to the individual defendants; to allege facts sufficient to support a plausible inference that there was an "agreement" among the members of the "group," to "act together for the purpose of acquiring, holding, voting, or disposing of" Veeva's securities; and to delete allegations of fraud, including allegations of a "fraudulent"

1 conspiracy, based on the representation by plaintiff's counsel that plaintiff was not
2 asserting a claim of fraud.

3 Plaintiff filed the second amended complaint ("SAC") on July 29, 2016, alleging two causes of action under § 16(b), as in the FAC – a claim for relief against the "Criterion Group" (all ten defendants), and a claim for relief against Criterion Capital, the three general partners, and the individual defendants. Defendants filed the present motion on September 21, 2016, seeking an order dismissing the SAC for failure to state a claim, without further leave to amend.

**DISCUSSION**

A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

A motion to dismiss should be granted if the complaint does not proffer enough

facts to state a claim for relief that is plausible on its face. See Twombly, 550 U.S. at 558-59. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Although the court generally may not consider material outside the pleadings when resolving a motion to dismiss for failure to state a claim, the court may consider matters that are properly the subject of judicial notice. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of L.A., 250 F.3d 668, 688-89 (9th Cir. 2001). Additionally, the court may consider exhibits attached to the complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), as well as documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims. See No. 84 Employer-Teamster Jt. Counsel Pension Trust Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

B.  Defendants' Motion

In the present motion, defendants contend that the SAC does not correct the deficiencies noted by the court in the order granting the motion to dismiss the FAC. The elements of a claim under § 16(b) are (1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a 6-month period (5) resulting in profit. Dreiling, 578 F.3d at 1001. Defendants argue that the SAC does not allege facts sufficient to show that Criterion Capital and the individual defendants are beneficial owners under § 16(b) (owners of more than ten percent of Veeva Class A common stock), and does not allege facts sufficient to show the existence of a "group." They

8

1 contend that the SAC should be dismissed with prejudice, as this is plaintiff's third
attempt to state a claim.

### 1. Application of exemptions

Defendants argue that Criterion Capital and the individual defendants are not deemed to be beneficial owners by operation of the RIA exemption and the control person exemption, respectively.

Plaintiff does not dispute that Criterion Capital is registered as an investment adviser under § 203 of the Investment Advisers Act, and does not claim that Criterion acquired shares of Veeva in an attempt to change or influence control of Veeva. Plaintiff alleges, however, that Criterion is not entitled to avail itself of the RIA exemption because it held substantial ownership interests in the Master Funds and thus did not trade for the benefit of third parties in the ordinary course of business. SAC ¶¶ 3, 21.

The court finds that the SAC does not allege facts sufficient to show that Criterion Capital does not trade for the benefit of third parties in the ordinary course of business. The court notes that plaintiff does not allege facts showing that Criterion had any governance relationship or control of the Master Funds themselves. Plaintiff asserts that as of the March 28, 2014, filing of Criterion's Form ADV, Criterion and its members beneficially owned 2% of the Partners Master Fund, 5% of the Horizons Master Fund, and 12% of the Vista Master Fund. SAC ¶ 20. Plaintiff also alleges that "[t]he Master Funds act only through Criterion Capital and Criterion Capital acted only for each of the Master Funds in their purchases and sales of Veeva Class A common stock." SAC ¶ 18.

The members of Criterion Capital are the three individual defendants. Each of the Master Funds is a limited partnership with a general partner, which in turn has an independent board of directors. While Criterion Capital has an investment management agreement with each of the Master Funds, neither Criterion Capital nor the three individual defendants (who control Criterion Capital) is a general partner or a member of the board of directors of the general partner of any of the Master Funds. Moreover, as of March 28, 2014, 98% of the shares in the Partners Master Fund, 95% of the shares in the

1 Horizons Master Fund, and 88% of the shares in the Vista Master Fund were owned by
2 entities unrelated to Criterion Capital. Thus, Criterion Capital manages the Master Funds
3 for the benefit of third parties.

4 There is no requirement in Rule 16a-1 that RIAs hold shares solely for the benefit
5 of third parties (as plaintiff seems to be arguing), and the court finds no basis for
6 expanding the scope of § 16(b) liability, particularly given the strict liability nature of the
7 statute. See Dreiling, 578 F.3d at 1001. Indeed, the Supreme Court has advised courts
8 to be wary of expanding the scope of § 16(b) liability on the basis of unclear language.
9 See Foremost-McKesson, Inc. v. Provident Sec. Co., 423 U.S. 232, 251-52 (1976).

10 Plaintiff also asserts that the three individual defendants – the members of the
11 Criterion Capital LLC – are not entitled to the "control person" exemption because they
12 have "affiliate" relationships with the non-party "Domestic Feeder Funds," which plaintiff
13 asserts had a greater than 1% "indirect beneficial ownership" of Veeva Class A common
14 stock. Plaintiff appears to base this claim on the fact that Criterion Capital is the general
15 partner of Domestic Feeder Funds. SAC ¶¶ 3, 23, 26.

16 Under Rule 16a-1, the "control person" exemption does not apply where "the
17 aggregate amount" held "directly or indirectly" by the "affiliates" of the control person
18 "exceed[s] one percent of the securities of the subject class." 17 C.F.R. § 240.16a-
19 1(a)(1)(vii). Rule 16 does not define "affiliate" or "control." Under SEC Rule 12b, an
20 "affiliate" is an entity "that directly, or indirectly through one or more intermediaries,
21 controls or is controlled by, or is under common control with, the person specified." 17
22 C.F.R. § 240.12b-2(3)(iv). The term "control" means "the possession, direct or indirect, of
23 the power to direct or cause the direction of the management and policies of [an entity],
24 whether through ownership of voting securities, by contract, or otherwise." Id.

25 Defendants contend that the "control person" exemption applies to the individual
26 defendants because as the members of Criterion Capital, an RIA, they are also the
27 control persons under Rule 16a-1(a)(1)(vii), and thus exempt from § 16's definition of
28 "beneficial ownership." Plaintiff, however, appears to be asserting that because the non-

10

party Domestic Feeder Fund limited partnerships are "affiliates" of Criterion Capital (based on Criterion Capital's status as general partner of each of the limited partnerships), they are also necessarily "affiliates" of the three members of the Criterion limited liability company, and that the Domestic Feeder Funds' alleged ownership of more than 1% of Veeva securities should be attributed to the individual defendants.

The court finds plaintiff's argument unpersuasive. Plaintiff does not allege that any of the individual defendants personally hold more than 1% of Veeva stock, but only that the individual defendants are "affiliates" of the Domestic Feeder Funds, which allegedly have "a greater than 1% indirect beneficial ownership of Veeva Class A common stock." See SAC ¶ 26 ("Because Criterion Capital served as the general partner of the Domestic Feeder Funds, the [individual defendants] and the Domestic Feeder Funds were affiliates of each other.") However, plaintiff also acknowledges that the Domestic Feeder Funds do not actually hold assets, but instead invest assets directly into the Master Funds. See SAC ¶ 25 ("Criterion Capital caused the . . . Feeder Funds to invest substantially all their assets in the Master Funds . . ."). Thus, even if the holdings of the non-party Domestic Feeder Funds could somehow be imputed to the individual defendants, there are no facts alleged showing that those Feeder Funds beneficially own any Veeva stock.

2. Allegations showing the existence of an agreement to act as a group

Defendants assert that plaintiff has not alleged facts sufficient to show the existence of a § 13(d) "group" for purposes of determining beneficial ownership. The key inquiry in determining whether a group exists such that beneficial ownership can be imputed to certain shareholders is whether the parties "agree[d] to act together for the purpose of acquiring, holding, voting or disposing of" a company's securities. See Dreiling, 578 F.3d at 1002-03 (citing 17 C.F.R. § 240.13d-5(b)(1)). Generally, courts have concluded that whether such an agreement existed is a question of fact. See id. at 1003 (citing Morales, 249 F.3d at 124). The agreement "may be formal or informal and may be proved by direct or circumstantial evidence." Id. Nevertheless, a plaintiff must still plead sufficient facts supporting such an agreement, given that "threadbare recitals of

the elements of the claim for relief, supported by mere conclusory statements," are not taken as true. Twombly, 550 U.S. at 555.

The court finds that the plaintiff has not alleged facts sufficient to show the existence of a § 13(d) group. Here, plaintiff refers to the alleged "agreement" among the members of the purported "Criterion Group" in three specific paragraphs of the SAC. First, plaintiff alleges that "[a]n agreement among the Criterion Group members and group conduct is properly inferred" from the following: (1) Criterion Capital (an RIA) acted as the "common investment adviser" to the Master Funds and the non-party Feeder Funds; (2) Criterion Capital "caused" the non-party Feeder Funds to invest all their investible capital in the Master Funds; (3) Criterion Capital "determined all investments and strategies" on the part of the Master Funds; (4) each of the Master Funds entered into an investment management agreement with Criterion Capital; (5) Criterion Capital "employed a common investment strategy" in managing the portfolio investments of the Master Funds; (6) the Master Funds' purchases/sales of Veeva securities "were made in virtual lockstep" and were "coordinated by Criterion Capital; (7) each of the Master Funds used the same address in the Cayman Islands, and employed the same auditor, brokers, and custodians, in San Francisco, and the same administrator; (8) Criterion Capital acted as the "agent" of all the Master Funds and their general partners in preparing and filing SEC reports in connection with the Master Funds' purchases and sales of Veeva securities; and (9) the Master Funds' general partners and the non-party Offshore Feeder Funds had the same directors. SAC ¶ 2.

Second, plaintiff alleges Criterion Capital's decisions when purchasing and selling Veeva Class A common stock for the accounts of the Master Funds "necessarily involved concerted group action" because Criterion was "coordinating concurrently timed purchases and sales for the account of the Master Funds." SAC ¶ 18. Plaintiff asserts that "[t]his coordinated activity impels the conclusion that the Master Funds had agreed with Criterion Capital and that, through Criterion Capital, the Master Funds had agreed amongst each other 'to act together for the purpose of acquiring, holding, voting, or

12

1 disposing' of" the Veeva Class A common stock. Id.

2 Third, plaintiff alleges that "[g]roup activity from which an agreement can be inferred is particularly manifest in the purchases and sales of Veeva Class A common stock by the Master Funds." SAC ¶ 41. Plaintiff adds that "[t]he virtual lockstep activity, from which an agreement to act in concert may be inferred," is shown by the positions and changes in positions in Veeva Class A common stock reported in the Schedule 13G and Schedule 13G amendments filed with the SEC jointly (but not as members of a Group) by Criterion, the individual defendants, the Master Funds, and the general partners of the Master Funds, in 2014 and 2015. SAC ¶ 41(i)-(v) (citing Declaration of Glenn F. Ostrager in support of opposition to motion to dismiss FAC, Exhs. 1-5).

The court previously held, in the July 5, 2016 order regarding defendants' motion to dismiss the FAC, that the allegations regarding the investment structure – that is, the Master Funds (referred to as "the Hedge Funds" in the prior order) acting together through Criterion Capital, their common investment adviser, and an appointed agent, to manage the Master Funds' trading in Veeva's Class A common stock – are not sufficient to support a claim that all ten defendants constituted a "group" for purposes of determining beneficial ownership. See July 5, 2016, Order at 15-17.

The allegations in the SAC are little changed from the allegations in the FAC, and the SAC plainly does not allege facts sufficient to show that the defendants "agreed amongst each other 'to act together for the purpose of acquiring, holding, voting, or disposing' of" shares of Veeva Class A common stock. The allegations in the SAC (as in the FAC) boil down to a claim that because the Master Funds were clients of, and entered into an IMA with, Criterion Capital, and because the individual defendants, as "portfolio managers," "directed" the purchases and sales of Veeva stock, all ten defendants necessarily entered into an "agreement" to act together "for the purpose of acquiring, holding, voting, or disposing of" Veeva stock.

These allegations are insufficient to state a plausible claim of beneficial ownership under the "group" theory. First, as indicated above, plaintiff asserts that

13

because Criterion Capital, as the common investment manager for the Master Funds, was also "coordinating concurrently timed purchases and sales for the accounts of the Master Funds," this "impels the conclusion" that the Master Funds and Criterion Capital "had agreed" to act together with regard to "acquiring, holding, voting, or disposing" of Veeva stock. See SAC ¶ 18. Carried to its logical conclusion, plaintiff's theory would necessarily lead to the result that anyone who enters into an investment advisory agreement with an RIA would form a Rule 13(d) group with the RIA and any other clients of the RIA who purchased shares of the same company's stock. This is plainly not what is set forth in § 13(d) or Rule 13d-5.

Second, there are no allegations in the SAC that Criterion Capital was part of any "agreement" between or among the Master Funds and their general partners. Allegations of parallel investment activity, such as appear in the SAC, are insufficient to allege an "agreement" to combine efforts in furtherance of a commonly held objective. Plaintiff alleges that Criterion entered into IMAs with each of the Master Funds, SAC ¶ 29, but does not allege that the Master Funds entered into agreements with each other, or that they entered into a single agreement or contractual arrangement with Criterion.[1] The assertion that Criterion "employed a common investment strategy in managing the portfolio investments of the Master Funds," see id., does not plead facts showing the existence of an agreement to engage in group activity specifically with regard to Veeva securities.

Finally, the court finds that the cases on which plaintiff relies in the opposition are inapposite. Plaintiff argues in the opposition that "[t]he cases that have considered the issue on a motion to dismiss have uniformly found that allegations of group conduct among an investment manager and its managed investment pools are sufficient" to

---

[1] Moreover, if, as plaintiff alleges, all the trading discretion lies exclusively with Criterion Capital, see SAC ¶¶ 2, 17, 18, 29, then the Master Funds could not have made a decision to enter into an "agreement" with other defendants with regard to Veeva securities.

14

1    withstand dismissal.  Pltf's Opp. at 8 (citing Goldstein v. QVT Assocs. GP LLC, 2010 WL
2    4058157 (S.D.N.Y. Oct. 5, 2010); Donoghue v. Genomica Corp., 2003 WL 1609191
3    (S.D.N.Y. March 6, 2003); Hollywood Casino Corp. v. Simmons, 2002 WL 1610598 (N.D.
4    Tex. July 18, 2002); Lerner v. Millenco LP, 23 F.Supp. 2d 337 (S.D.N.Y. 1998); Strauss v.
5    Am. Holdings, Inc., 902 F.Supp. 475, 479-80 (S.D.N.Y. 1995)).  Plaintiff adds that the
6    recent case of Greenfield v. Cadian Capital Mgmt, LP, 2016 WL 5793416 (S.D.N.Y. Sept.
7    30, 2016) is "directly on point."  However, the cases cited by plaintiff are distinguishable.

For example, the courts in Hollywood Casino, Lerner, and Strauss each found an "agreement" with respect to the securities of the issuer, but there was no involvement at all by an RIA.  In Hollywood Casino, the alleged "group" consisted of former officers of the issuer-corporation and outside investors who sought to take control of the corporation.  See id., 2002 WL 1610598 at *1.  In Lerner, several corporations were alleged to have formed a "group" with each other because they coordinated their investments "for the purpose of artificially maintaining the market price" of the issuer's securities.  See id., 23 F.Supp. 2d at 338-39, 343-44.  In Strauss, an individual (Koether) was alleged to have formed a "group" with two entities – a corporation (Amhold) and a partnership (Shamrock) – and the court found that because Koether was the president and CEO of Amhold, and the sole general partner of Shamrock, he was necessarily the only one who could direct the trading activities of both, and that an agreement could be inferred from that fact.  See id., 902 F.Supp. at 476.

The other cases plaintiff relies on are also distinguishable, in that the managed funds were controlled by a single individual who served both as an investment manager for the funds and as a managing director of the general partner – unlike here, where the funds are governed by an independent Board, with no overlap between the RIA (Criterion Capital) and the general partners.

In Cadian, a single individual was alleged to be the sole managing member of both the Cadian funds' general partner and the Cadian RIA's general partner.  The court found sufficient allegations of group conduct because the individual (Bannisch) was "the sole

decision maker for each of the Cadian Entities and effected all of their trades in [the issuer's] common stock." See id., 2016 WL 5793416 at *7. In Goldstein, a single individual was a managing member of the investment manager, in addition to being a managing member of the investment funds' shared general partner. See id., 2010 WL 4058157 at *5. In Genomica, a single individual was alleged to be the president, sole director, and sole stockholder of the RIA, which was also alleged to be the general partner of the investment funds. See id., 2003 WL 1609191 at *3.

Here, unlike in Cadian, Goldstein, and Genomica, neither Criterion Capital nor any of the individual defendants are alleged to have served as the general partner of any of the Master Funds, or as a director of any of the general partners. Plaintiff has not alleged any overlap in personnel between Criterion and the general partners, and the court finds that this case is not "just like" Cadian or the other cases cited by plaintiff in the opposition.

**CONCLUSION**

In accordance with the foregoing, defendants' motion to dismiss the SAC is GRANTED. To be plausible on its face, a claim must be more than merely possible or conceivable. See Iqbal, 556 U.S. at 678-79. Plaintiff has not alleged facts sufficient to create a plausible inference that that any defendant is a beneficial owner of more than ten percent of Veeva Class A common stock, or to create a plausible inference that defendants agreed to act as a group "for the purpose of acquiring, holding, or disposing of" shares of Veeva securities. Plaintiff has added little to the SAC that was not also alleged in the FAC, and the court finds that further leave to amend would be futile.

**IT IS SO ORDERED.**

Dated: June 23, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge

16